FOEMMEL, by Guardian *ad litem,* Plaintiff and Respondent, vs. MUELLER and another, Defendants and Appellants: NICHOLS and another, Impleaded Defendants and Respondents.   [Three cases.]

*June 8—July 12, 1949.*

For the appellants there was a brief by *Stafford & Stafford* of Chippewa Falls, attorneys, and *A. L. Devos* of Neillsville of counsel, and oral argument by *Mr. Harold E. Stafford* and *Mr. Devos*.

*H. G. Haight* of Neillsville, attorney, and *Francis J. Wilcox* of Eau Claire of counsel, for the respondent.

For the impleaded respondents there was a brief by *V. W. Nehs* of Neillsville, and *Fisher, Reinholdt & Peickert* of Stevens Point, and oral argument by *R. T. Reinholdt*.

FRITZ, J.  The collision involved in these actions occurred at about 6 p.m., on January 19, 1948, when the plaintiff Silas Foemmel's northbound automobile operated by him ran into the rear of Mueller's truck, which he had left standing in the lane for northbound traffic of a twenty-four-feet-wide roadway.  Although it was dark for about ten minutes preceding the collision, Mueller left his truck stand in that lane, facing

northward, without placing any fusees or flares to the rear of his truck. Prior to leaving the truck there, he had stopped on the roadway abreast of the southbound car, which was operated by the interpleaded defendant Nichols. They were having a conversation until each of them had to move his vehicle ahead so that they were seventy-six feet apart, in order to make room for Ed Ploman to drive between them in his northbound truck. There was evidence which the jury could consider credible to establish that Mueller failed to have any lighted clearance lights and a taillight lit on the rear of his truck as required by statute; and that he did not place any fusees or flares at the rear of his truck is undisputed.

Ploman testified, in relation to the location of Mueller's truck and Nichols' car on the roadway:

"I noticed the vehicles as they were parked made room for me to go through; I was going slow. . . . I could not see where the other one went, the lights [Nichols' headlights] facing south just glared enough so I could not see where the other car was. . . . I could not tell where the truck was that was facing in a northerly direction. . . . I just drove slow on the right-hand side and the minute I got by the head-lights why I seen the truck which I suspected would be on there; . . . I just had room to turn to the left and go around the truck without any trouble. I had to turn right off to get in between the truck and the car."

. As to what lights were on the truck, Ploman testified: "I failed to see any lights on the truck. After I got by I checked to see whether or not there were any lights on the truck, the instant I got by the truck I looked back through the rear window and I noticed there were lights on the cab of the truck. By that I mean on top of the truck. There were no lights in where the headlights were located. I didn't see any parking lights on on the truck, only on the cab. . . . I didn't see any lights on the rear of the truck. I would not swear there wasn't any, I failed to see them if there was. I would swear there was no headlights. I would swear there was lights on top of the cab. In the headlamps there was no lights. As to the taillights I would not say whether there

was or if there wasn't, I failed to see—I didn't see any. I did not make any observations as I went by to see if there were taillights there. The fact that the Nichols car had its lights on shining toward me did have some effect on my vision, it did until I got just by the headlights, then I had to start turning to go around the truck; I would not have had time to stop to look to see if there was taillights on the truck, if there was I didn't see them; as I got by them I turned around to look and I saw clearance lights—there are three on top of the cab. . . . I want my testimony to stand that I did not see any taillight lit or any rear clearance lights on the truck; if they were lit I did not see them as I was blinded by the lights of the car parked on the west side of the road."

Nichols testified: "When I got out of my car I walked toward where the Mueller truck was parked. . . . I don't remember seeing any lights on the Mueller truck at that time, I just looked for him. I saw the light ahead. I could see ahead, that he had his lights on. I do not know whether or not these came from the reflectors or the lights that were on the top of the cab. I could not see them from the back. I knew he had his headlights on because he drove ahead, I could see him in the light of the headlights as he was coming."

Mueller testified he did not know whether his taillight was in operation at the time. Six weeks before the taillight had been working but he did not know whether it was working at the time of the accident or not. He made no mention of clearance lights on the rear of the truck, only on the front of the cab.

A traffic officer testified he picked the taillight up lying in the ditch and took it to a supply company to have it checked because he noticed there was no lens in it and the bracket showed that it had been broken for quite a while. He found the supply company had made an attempt to light it but that it would not light.

Silas Foemmel testified that after the accident he could not remember what had happened before.

The evidence clearly warranted the jury's findings that Mueller was causally negligent in stopping on the highway in the place he did without placing fusees or flares (in violation of sec. 85.06(2) (d), Stats.) ; in failing to have rear clearance

lights lit on the truck (in violation of sec. 85.06(2)(c), Stats.); in failing to have a usable, lighted taillight (in violation of secs. 85.06(1) and 85.06(2)(b), Stats.); and consequently there must be sustained the jury's findings that he was causally negligent in each of those respects.

The jury found, in relation to Nichols, that he was causally negligent in "management or operation of the lights on his car."

In relation to Foemmel, the jury found that he was not negligent in lookout for obstructions in the road and in his management and control of his car, but that he was causally negligent in respect to the lights on his car.

And the jury found that of the total causal negligence of the parties, Foemmel's negligence was fifteen per cent, Nichols' negligence was twenty-five per cent, and Mueller's negligence was sixty per cent.

The court, on motions after verdict, changed to "No" the jury's findings that Nichols was negligent as to management and control of his headlights; and thereupon the court dismissed the cross complaint of Mueller and his insurer against Nichols. In relation to the other parties the court ordered judgments on the verdict for the recovery from Mueller and his insurer of the amount of damages assessed by the jury in the cases of Jerome Foemmel and the estate of Stanley Foemmel; and for Silas Foemmel's recovery of the jury's assessment of his damages, diminished by fifteen per cent because of the negligence found attributable to him. But because the coverage under the policy of Mueller's insurer was limited to $10,000, the total amount of damages recoverable from it was limited to that sum.

Mueller and his insurer contend that the court erred in setting aside the jury's finding that Nichols was causally negligent in the management and operation of his headlights. They claim that the court should have approved that finding because Nichols testified that he turned on and "flicked" his headlights two or three times when Foemmel was approach-

ing Nichols' car; and that there was also Ploman's testimony that as he was approaching, the lights on Nichols' car seemed to be "kind of blinding" or "glaring in the windshield;" that he could see the roadway in front of the car, but in passing it could not see what was beyond its headlights and the minute he got by the headlights he saw the truck which he suspected would be there. There is no evidence contrary to or which can reasonably be deemed to render incredible the testimony of Ploman and Nichols in relation to the latter's headlights and the effect thereof on the driver of an approaching northbound car. And as Foemmel testified he had no recollection as to what occurred or was done or observed by him for some time preceding and after the collision, there is no sufficient basis in the record for finding that Nichols was causally negligent in his management or operation of his headlights. As the jury's finding in this respect was based on solely its conjecture or speculation, the trial court rightly changed the jury's answer and adjudged the dismissal of the cross complaint against Nichols and his insurer. As a result of this dismissal it was error to permit the jury to include in its consideration of the causal negligence attributable to the respective parties, the conduct of Nichols, to whom it erroneously attributed twenty-five per cent of the causal negligence, and on that assumption found that of the remaining seventy-five per cent, fifteen per cent was attributable to Foemmel and sixty per cent to Mueller. Consequently, those findings must be set aside under these circumstances and the respective percentages of the total causal negligence of Mueller and Foemmel attributable to each of them must be determined upon a new trial.

Defendants also contend that there was prejudicial error in submitting the following questions in the special verdict:

Question 3. Immediately preceding, and at the time of the accident involved here, was the defendant Charles Mueller negligent in respect to:
A. . . .

B. In stopping on the highway in the place he did without placing burning fusees or flares upon the road near his standing truck?

C. In failing to have clearance lights burning upon the truck?

The jury answered "Yes" to these questions. They are defective because in Question 3B, by the use of the word "in" just preceding the word "stopping" the meaning of the question is such that it assumes Mueller did fail to place burning fusees or flares while stopping on the highway. Instead, the court should have submitted the direct question whether "Mueller was negligent in stopping without placing" such fusees or flares.

Likewise, Question 3C is defective because by using the word "in" just preceding the words "failing to have clearance lights burning" the meaning is such that the question assumes Mueller did fail to have such lights. There should have been submitted the direct question whether Mueller was negligent in failing to have the clearance lights burning. In view of the errors in these respects, the jury's answers to questions 3B and 3C cannot be sustained and a new trial must be ordered. *Maas v. W. R. Arthur & Co.* 239 Wis. 581, 586, 2 N. W. (2d) 238.

*By the Court.*—The provisions in the judgments which dismissed the cross complaint against the interpleaded defendants are affirmed; and the judgments are reversed so far as they provide for the plaintiffs' recovery of damages from defendants Charles Mueller and his insurer, and the causes are remanded with directions to grant a new trial of the plaintiffs' actions against said defendants.