GIEMZA, Plaintiff and Respondent, v. ALLIED AMERICAN MUTUAL FIRE INSURANCE COMPANY, Defendant and Respondent: EGLY and another, Defendants and Appellants.*

*May 2—June 7, 1960.*

* Motion for rehearing denied, without costs, on October 4, 1960.

556

558

For the appellants there were briefs by *Bender, Trump, Davidson & Godfrey* of Milwaukee, and *Schlotthauer & Jenswold* of Madison, attorneys, and *Kneeland A. Godfrey* of Milwaukee, and *John T. Jenswold* of Madison, both of counsel, and oral argument by *Kneeland A. Godfrey* and *John T. Jenswold*.

For the respondent Harold Giemza there was a brief by *Max D. Davidson* and *Phillips, Phillips, Hoffman & Lay*, all of Milwaukee, and oral argument by *Mr. N. Paley Phillips* and *Mr. Davidson*.

For the respondent Allied American Mutual Fire Insurance Company there was a brief by *Wickham, Borgelt, Skogstad & Powell*, attorneys, and *Reuben W. Peterson, Jr.*, of counsel, all of Milwaukee, and oral argument by *Mr. Peterson*.

HALLOWS, J. Egly and Giemza raise many issues on the appeal but because we are of the opinion that a new trial must be had, only those issues relating to granting a new trial will be discussed. Egly and Sweet started out from the Circle Inn about two miles east of the place of the accident. At the tavern, Egly, the Sweets, Giemza, and others

were gathered. There was some drinking and conversation on this early evening of the Fourth of July. The testimony. is conflicting, but there was some talk of the relative merits of Egly's and Sweet's cars and whether there would be a race. Disinterested witnesses testified Egly raised a commotion with his car when he left the tavern parking lot, that Giemza in Sweet's car indicated the race would be west on the highway, that both cars stopped a short way down the road near the Honey Pot store, started up, and stopped again, that Sweet was ahead of Egly going about 40 miles per hour a mile east of the junction of the highway with TT, and that Egly did or did not pass Sweet. No statement of facts can be given without a complete review of the conflicting testimony, which is not necessary. Running through the entire case is the basic question of whether there was a race and so understood by Egly, Sweet, and Giemza.

*Verdict Defective in Failure to Include Question of Whether a Race Was Involved.*

The issues in this case were tried originally on the theory there was no race between Egly and Sweet. The original pleadings between the plaintiff and Egly did not create the issue of racing. However, the Rauch case did contain the race issue, so the jury had such evidence before it. The race question, however, was raised in the amended reply of Sweet's insurer to the cross complaint of the defendants, Egly and his insurer. A specific question on racing was requested in the special verdict but was not submitted by the court on the ground of lack of any pleading raising the issue between Giemza and the defendants. Because the cases were tried together, this issue existed in the evidence. The violation of sec. 346.94 (2), Stats., prohibiting any race or speed or endurance contest upon any highway would constitute negligence. The trial court thought the issue of

race dropped out of the case when the Rauch case was settled, but did instruct the jury concerning racing in connection with the question on management and control. In reviewing the verdict, the trial court sustained some of the answers on the theory that the jury must have based them on the fact that Egly and Sweet were engaged in a race. The trial court stated in its opinion: "There is a substantial question in the case whether Egly and Sweet were racing, and there is evidence that prior to the collision they were driving abreast at a rate of speed in excess of about 100 miles an hour." Other questions were sustained on the theory there was no race. Under the peculiar circumstances of this case, the pleadings should have been amended under sec. 269.44 to conform them to the proof and the issue submitted in the special verdict. Whether Sweet and Egly were racing, and whether Giemza knew that a race was to take place when be became a passenger are important ultimate facts which would have to be determined to establish the various relationships between these parties and the duties owing to each other. The real issues have not been fully tried, and a new trial should be granted under the discretionary power of this court under sec. 251.09. See *Minkel v. Bibbey* (1953), 263 Wis. 90, 56 N. W. (2d) 844.

### Contributory Negligence.

The defendant, Egly, requested the court to include in the special verdict the question of Giemza's contributory negligence as to knowingly placing himself in a place of danger. This request was refused because the issue was not raised in the pleading and was sufficiently covered in question 5 which dealt with Giemza's negligence as to lookout. An amendment to Egly's answer pleading contributory negligence was offered. Because the race issue permeated the case, the question of the plaintiff's knowingly placing himself in such extra hazard or danger should have been

submitted to the jury. It is important in determining the rights of the plaintiff and the duties of the defendant to know whether Giemza knowingly participated in a race when he entered Sweet's car. The testimony on this point is conflicting. The trial court in its opinion stated there was evidence that Giemza when he stepped into Sweet's car at the Circle Inn actually set the terms of the race.

.The assumption by a guest in an automobile of the risks due to the host-driver's negligence does not bar, in the absence of contributory negligence, a recovery from another tort-feasor for the results of the latter's negligence. Assumption of risk does not necessarily constitute contributory negligence and does not extend beyond the negligence of the host-driver. However, there may be circumstances when the assumption of the host's risk may also constitute contributory negligence and instances wherein the risks inherent in a situation or in the acts of another person not standing in a host-guest relationship are voluntarily assumed so as to make the one assuming such risk contributorily negligent. *Veverka v. Metropolitan Casualty Ins. Co.* (1957), 2 Wis. (2d) 8, 85 N. W. (2d) 782; *Scory v. LaFave* (1934), 215 Wis. 21, 254 N. W. 643. Knowingly entering or participating in a race or speed contest on a public highway, and thus exposing oneself to such risks as flow from racing, would be such a situation. See Restatement, 4 Torts, p. 491, sec. 893; Prosser, Law of Torts (2d ed.), p. 304, sec. 55. If there was a prearranged race between Egly and Sweet, and Giemza knew of it, he was guilty of contributory negligence in voluntarily exposing himself to the inherent or possible risks of the race. It would be a choice of conduct which would not be adopted by a reasonably prudent man.

This doctrine is sometimes called for convenience the "voluntary assumption of risk" to indicate a defense based

upon the fact the plaintiff was aware of the risk and was unreasonable in encountering it, *i.e.,* entering or remaining in a dangerous place or situation. However, the ordinary assumption of risk in a host-guest relationship is based on consent of the guest without regard to whether such consent is reasonable or not, so as to constitute contributory negligence. The distinction is important. Only the contributory negligence as to lookout of Giemza was submitted to the jury. This was separate from the assumption-of-risk questions, and properly so. However, this inquiry did not cover the element of contributory negligence of knowingly placing himself in a position of danger. It was error for the court not to submit a question on this issue as requested by Egly.

## Inconsistent Verdict.

Egly contends it was error to submit a question both on management and control and the manner in which Egly passed Sweet because management and control included the question of passing and the manner thereof. The trial court was originally of the view that the passing question should not be submitted because it would result in a duplicity if the jury should find Egly negligent both as to management and control and in the manner of passing. However, the court did submit the passing question and the jury found Egly causally negligent as to both. The court in sustaining the verdict reasoned that the issue of Egly's management and control came into existence after Egly attempted to pass Sweet, or after he cut into his proper lane, and the issue of passing was prior in time and raised the question of whether he should have attempted to pass Sweet under the circumstances. We cannot differentiate between Egly's negligent management and control in passing Sweet from his negligence in the manner in which he passed. The two questions overlap, involve the same act, and are

duplicitous. A similar question was considered in *Miller v. Kujak* (1957), 274 Wis. 370, 80 N. W. (2d) 459, 81 N. W. (2d) 569, where the court inquired as to the defendant's management and control and also in respect to swerving to the left from the shoulder to the concrete of the highway. In that case the submission of the question was held to be duplicitous and reversible error. When duplicitous questions are asked, a new trial is generally granted because of the effect the answers might have had in the apportionment of negligence. *Wiley v. Fidelity & Casualty Co.* (1958), 3 Wis. (2d) 320, 88 N. W. (2d) 366.

Even if it had been proper or permissible in the trial court's discretion to submit both inquiries to the jury, it was error to submit the question of passing in the form in which it was submitted. The question was stated as follows:

"Question 3: At and immediately prior to the collision was Egly negligent in respect to:
(d) The manner in which he passed Sweet?"

This form assumes that Egly passed Sweet prior to the collision. The testimony on this point was in conflict and unresolved. In *Maas v. W. R. Arthur & Co.* (1942), 239 Wis. 581, 2 N. W. (2d) 238, the verdict inquired whether the defendant was negligent " 'in attempting to overtake and pass the car . . . at the intersection.' " The court stated that the verdict was defective in using the word "in" because in that form it is assumed the driver attempted to pass. In *Foemmel v. Mueller* (1949), 255 Wis. 277, 38 N. W. (2d) 510, a question which inquired if the defendant was negligent "in" failing to have clearing lights burning, was criticized as assuming the defendant failed to have clearing lights burning which was one of the issues.

The answers to questions 8 (a) and (b) found Sweet negligent in increasing the risk to Giemza as to management and control, but not as to speed. The court sustained the answer on speed on the theory that Giemza participated

in the race. On increasing the risk as to management and control, the trial court thought the jury could believe that Sweet's negligent management and control caused by Egly's act of cutting in front of him was so momentary as not to have been anticipated by Giemza. This is inconsistent with the race theory. The two answers cannot be explained by different theories of the evidence. The answers to question 9 in which the jury found Giemza assumed the risk of both Sweet's speed and management and control, were sustained on the race theory. Giemza in his cross appeal contends the court erred in dismissing the complaint against Sweet's insurer, the Allied American Mutual Fire Insurance Company, because the answers to questions 8 and 9 must be interpreted to mean Giemza did not assume the increased risk of management and control and therefore under *Sprague v. Hauck* (1958), 3 Wis. (2d) 616, 89 N. W. (2d) 226, he could recover from Sweet's insurer. Such interpretation of these answers can only be justified on the view there was no race, which Giemza strenuously contends. Giemza does not request a new trial, but only a determination of the effect of the jury's answer to questions 8 and 9 so far as they affect Sweet's insurer.

However, in view of what we have already said, the undetermined basic issues involve the plaintiff in his relationship with Sweet's insurer, and with Egly and the issues between the defendants. No question has been raised concerning the amount of damages. We see no reason for putting the parties to the expense of relitigating that issue. The new trial should be confined to the various questions of negligence involved.

*By the Court.*—Judgment reversed, and new trial granted on all issues excepting damages.

The following opinion on motion to review taxation of costs was filed December 15, 1960:

PER CURIAM (*on motion to review taxation of costs*). Appellants Egly and the Farmers Insurance Exchange proposed and the clerk of this court taxed, among other items of costs, $508.85, the amount paid for a supersedeas bond. Plaintiff objected to this item, and in other respects.

Sec. 251.23 (1), Stats., lists items of disbursement which are to be recovered as costs in this court. Payments to surety companies in order to obtain undertakings are not included, but ever since the 1939 edition of the statutes, the Revisor has printed at the foot of this section, the following:

"CROSS REFERENCE: See 204.11 as to recovery of premium on suretyship obligation given by a fiduciary."

The material portion of sec. 204.11, Stats., provides:

"Any party entitled to recover costs or disbursements in an action or special proceeding may include in such disbursements the lawful premium paid to such corporation for a suretyship obligation."

We conclude that these statutes are to be read together, as suggested by the cross reference, and that a lawful premium necessarily paid to a surety corporation for executing an undertaking in order to stay execution of a judgment upon appeal to this court is a proper item of costs.

Plaintiff asserts that the premium should not be recovered in this instance because the undertaking to stay execution was unnecessary. Upon this point, affidavits of attorneys for each party were filed for the clerk's consideration. While there is a discrepancy as to the time of a particular conversation, it sufficiently appears that plaintiff's attorney informed appellants' attorney that execution would be issued if an appeal were taken. This is an adequate showing of need for an undertaking to stay execution.

Plaintiff also points out that the undertaking only guaranteed payment by Farmers of the judgment rendered against

it if affirmed. The judgment rendered against Egly, Farmers' assured, exceeded policy limits, and there was no undertaking that Egly would pay all, or any part of the judgment. Thus plaintiff was left free to have execution issued against Egly. Whatever the obligation of Farmers to protect their insured, pending the appeal, Farmers' failure to do so does not affect the propriety of recovery from plaintiff of the premium for the undertaking which was obtained.

Plaintiff's other objections to the costs as taxed by the clerk are also deemed to be without merit, but do not require discussion in this memorandum.

Taxation of costs herein by the clerk is affirmed.

---

* Motion for rehearing denied, without costs, on October 4, 1960.