Magin, Appellant, v. Bemis and another, Respondents.
Bemis, Respondent, v. Magin, Appellant.

*June 4—June 29, 1962.*

For the appellant there was a brief by *Eisenberg &
Kletzke,* attorneys, and *Edwin A. Star* of counsel, all of
Milwaukee, and oral argument by *Mr. Star.*

For the respondents there was a brief by *Anderson &
Murphy* of Milwaukee, and oral argument by *J. Stewart
Murphy.*

HALLOWS, J.   The facts are in dispute and present two
versions of the accident.  According to Magin's testimony,
he was traveling east on West Mitchell street at 15 or 20
miles per hour, approaching South Fifty-Fourth street. When
he was about 150 feet from the point of impact and after the
traffic, which had been in front of him, had turned off the
arterial to the right, he saw the Bemis automobile approach-
ing at about 45 miles per hour from the north on South
Fifty-Fourth street some 160 or 170 feet north of the point
of impact.  He kept the Bemis automobile in his vision
continually and did not observe Bemis stop at the stop sign.
When he realized Bemis was not going to stop and was
going to continue through the intersection, he sounded his
horn, applied his brakes and turned the motorcycle to the

right to avoid the accident, but the right front fender of the Bemis car struck the motorcycle. Magin was unseated and struck the automobile and landed on the pavement on his buttocks and back.

Bemis testified he came to a full stop at West Mitchell street, looked in both directions and as he started up slowly, saw no vehicles coming from either direction on West Mitchell street. He accelerated to a speed of 10 or 15 miles per hour through the intersection and when he reached a point where his driver's seat was on or just past the center line of Mitchell street, he first observed Magin approaching from his right with a roar at a distance of 55 feet. Bemis testified he started up slowly because his vision was obscured to the right beyond mid-block because of the backup of cars from South Fifty-Fourth street. When Bemis saw the motorcycle, he turned his car to the left. He estimated the speed of the motorcycle at 40 to 50 miles per hour, and within a few seconds after first seeing the motorcycle the impact occurred, the motorcycle striking the car door. Bemis saw Magin turn his motorcycle to the right. He did not remember whether he accelerated or braked his car upon seeing Magin approaching.

Magin was taken to a hospital and found to have sustained three pelvic fractures. There was fragmentation of the bones and damage to the soft tissue in the pelvic area. Magin lost approximately four months of work. There is some dispute in the testimony concerning his recovery. There was some medical testimony to the effect he has had a complete recovery, but Magin claims he developed a limp and a disability which prevents him from normal exercise to keep down his weight. There was medical testimony that because of the fragmentation of the bones there would be more pain than from a fracture without fragmentation.

Magin submits the evidence does not sustain the finding that he was negligent in respect to claiming the right-of-way; that Bemis as a matter of law was negligent in failing to yield the right-of-way and the damages were manifestly inadequate. One of the difficulties we have with the verdict is the answers cannot be rationalized on any consistent theory. In sustaining the verdict, the trial court in its memorandum opinion stated that in finding Bemis not negligent as to yielding the right-of-way, the jury found Magin was such a distance away when Bemis entered the intersection that Magin could not have been within the term "approaching the intersection" at approximately the same time and, therefore, Magin would not have the right-of-way and there was no duty on the part of Bemis to yield. However, in finding Magin negligent in claiming the right-of-way, the trial court was of the view that under the instructions the jury found, in effect, that Magin was insisting on the right-of-way he otherwise might have had and, because the jury also found Magin was not negligent as to lookout or speed, he could have controlled the situation and avoided the collision had he not insisted on his right-of-way.

While no exception was taken, the inquiry is unusual in form and misleading in that it asked a question in terms of negligence in respect to claiming the right-of-way. The instructions were general and not keyed to particular inquiries. The jury was correctly instructed that while one may have the right-of-way and may presume others will respect it, he may nevertheless be negligent in respect to managment and control if his right-of-way is not respected and he does not do what he can do to prevent the accident. Other parts of the instructions were such as would lead the jury to believe this inquiry could apply to Magin if he were not approaching the intersection within the meaning of the right-of-way concept and yet was insisting on a right he did not have. The jury was also instructed in reference to both

subs. (1) and (4) of sec. 85.18, Stats. 1955,[1] which were in effect at the time of this accident in 1956. We do not see how sec. 85.18 (1) has any application to the facts of this case. West Mitchell street was an arterial and the right-of-way issue was governed solely by sec. 85.18 (4).

In the instant case, as Magin on the arterial was approaching from Bemis' right, it was perhaps natural to instruct on both subs. (1) and (4) of sec. 85.18, Stats. 1955, especially in view of the language in *Nessler v. Nowicki* (1961), 12 Wis. (2d) 421, 107 N. W. (2d) 616. Stating that both subsections apply under the facts of that case was a harmless inadvertence and an oversight, as a determination of the right-of-way, as in this case, was governed solely by sec. 85.18 (4).

Prior to ch. 531, sec. 4, Laws of 1955, one approaching an arterial and stopping was then governed by the right-of-way rule provided in sec. 85.18 (1), Stats. 1955. Cases construing that section are no longer applicable to a sec. 85.18 (4), Stats. 1955, case and should be so distinguished. See, for *e.g., Blom v. Kumbier* (1957), 275 Wis. 227, 81 N. W. (2d) 528. After the amendment, one approaching an arterial had the duty to stop and yield the right-of-way to the approaching operator on an arterial whether he was coming from the right or the left of the operator stopped on the nonarterial highway. This change in the statute granting the right-of-way to approaching traffic on the arterial was pointed out in *Plog v. Zolper* (1957), 1 Wis. (2d) 517, 85

---

[1] "85.18 RIGHT-OF-WAY. (1) *Right-of-way at intersections.* When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right, except as otherwise provided in this section. . . .

"(4) *Vehicles stopping for arteries for through traffic.* The operator of a vehicle shall stop as required by sec. 85.69 before entering an artery for through traffic, and shall yield the right-of-way to other vehicles which have entered or are approaching the intersection upon the artery for through traffic."

N. W. (2d) 492, not cited by the trial court or either party. In that case, this court said "approaching the intersection" as employed in sec. 85.18 (4) had a related meaning to the interpretation of the same term under sec. 85.18 (1) as given in *Vogel v. Vetting* (1953), 265 Wis. 19, 60 N. W. (2d) 399. The interpretation as applied to sec. 85.18 (4) must be in realistic terms and take note of the fact that the operator required to stop for the arterial highway is not approaching the highway and has the duty to yield the right-of-way to one who is approaching on the arterial. Consequently, a vehicle on an arterial highway may be said to be approaching an intersection when it is not so far distant therefrom that considering the rate of speed at which it is traveling, it would be reasonable to assume that a collision would occur if the vehicle stopped at the intersection on the nonarterial were to start in motion and move into the path of the vehicle on the arterial.[2]

It is also to be noted the change in 1955, which no longer incorporated sec. 85.18 (1), Stats., by reference in sec. 85.18 (4), removed therefrom the provision that a driver of a vehicle driving at an unlawful speed shall forfeit any right-of-way which he might otherwise have. Consequently, while unlawful speed on an arterial may be an element of negligence, it does not work a forfeiture of the right-of-way as it would on a nonarterial highway.

The key finding in the instant case was whether Magin was approaching the intersection within the meaning of sec. 85.18 (4), Stats. 1955. This issue was not consistently determined and ought to be relitigated in the interest of justice. However, there is another ground which requires

[2] In *Heinecke v. Hardware Mut. Casualty Co.* (1953), 264 Wis. 89, 58 N. W. (2d) 442, we held, in construing sec. 85.18 (9), Stats. (vehicles emerging from alley or private driveway), which is worded and defined similarly to sec. 85.18 (4) with respect to approaching vehicles under *Plog,* that the term "vehicles approaching" does not limit the operation of the statute to those vehicles which are in sight.

reversal. If Magin was approaching the intersection, then Bemis as a matter of law was negligent in failing to yield the right-of-way whether he was also negligent as to lookout or not. One approaching an arterial is obliged to stop, look, and think. See *Plog v. Zolper, supra*. This is especially true under the rule that a motorist proceeding on an arterial has the right to assume that a motorist approaching the arterial on a nonarterial street would not only physically stop his car for the arterial but he would also not plunge ahead into the intersection without first ascertaining whether he could do so with safety. See *Kraskey v. Johnson* (1954), 266 Wis. 201, 63 N. W. (2d) 112; *Schmit v. Jansen* (1945), 247 Wis. 648, 20 N. W. (2d) 542. In the trial court's view of the verdict, Magin was negligent as to management and control in not yielding his right-of-way and in not attempting to prevent the accident and thus necessarily was approaching the intersection. Magin's nearness to the intersection is supported also by the finding he was not speeding. The answer of the jury that Bemis was not negligent in yielding the right-of-way should have been changed by the court.

Allowing such a verdict to stand also resulted in the shifting of the right-of-way of Magin to Bemis. Such a result was condemned in *Reynolds v. Madison Bus Co.* (1947), 250 Wis. 294, 26 N. W. (2d) 653. See also *Schill v. Meers* (1955), 269 Wis. 653, 70 N. W. (2d) 234. One having the right-of-way on an arterial under sec. 85.18 (4), Stats. 1955, may be negligent in respect to lookout or management and control in not attempting to avoid a collision, but such a case does not shift the right-of-way to the other party because the situation would not arise unless such other party was negligent in failing to recognize or yield the right-of-way to the motorist approaching on the arterial. The right and the duty are correlative. The question of right-of-way is separate and distinct from other items of negligence

and should not be confused therewith. *Reynolds v. Madison Bus Co., supra; Hamm v. Miller* (1949), 256 Wis. 192, 40 N. W. (2d) 387; *Garcia v. Heritage Mut. Ins. Co.* (1962), 16 Wis. (2d) 50, 113 N. W. (2d) 843.

Magin argues the amount of damages awarded for pain and suffering was manifestly inadequate. If this were the only issue in the case, we would be inclined to sustain the award. However, since there must be a new trial, we believe it should embrace all issues.

*By the Court.*—Judgments reversed, and a new trial granted on all issues.

WILKIE, J., took no part.