OGLE, Plaintiff, v. AVINA and others, Defendants and Appellants: PINTAR and another, Defendants and Respondents.

*November 2—December 2, 1966.*

126

For the appellants Norbert Avina and American Family Mutual Insurance Company there was a brief and oral argument by *John W. Emmerling* of Milwaukee.

For the appellants Thomas Laufenberg and Great Lakes Mutual Insurance Company there were briefs and oral argument by *Gerald P. Hayes* of Milwaukee.

For the respondents there was a brief by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *John A. Kluwin.*

HALLOWS, J. The appeal raises three questions which respectively relate to whether Pintar was negligent, whether Avina's negligence was causal, and whether the apportionment of the causal negligence between Avina and Laufenberg was correct. In determining these issues this court must test the findings of the trial court by the "great weight and clear preponderance of the evidence" rule. *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 255, 112 N. W. (2d) 701; *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. (2d) 419, 421, 141 N. W. (2d) 212.

The collision occurred in a 50-miles-per-hour speed zone on Highway 15 in Waukesha county two miles east of Prospect Hill at 9:45 p. m. on September 19, 1962. Highway 15 at this point runs approximately east and west and on the night of the accident the road was dry. A private driveway from the premises south of the highway known as the Berlin Auction Barn connects to the

highway 30 or 40 feet west of the point of impact. West of the driveway, Highway 15 is straight for 1,000 feet and then curves slightly to the south for 880 feet.

Pintar was leaving the Berlin Auction Barn parking lot and as he reached the south side of Highway 15 he stopped on the private driveway and looked to the west and to the east twice. He testified that the first time he looked to the west he saw beams of a car's headlights glowing around the curve but saw nothing to his right. On his second look to the left he saw the headlights of a car which he estimated to be about 1,000 feet away. On his second look to the east he saw the glow of lights of a westbound car over the slight crest of the road some 600 feet distant. He testified he did not compute or calculate the speed of the car approaching from the west but he assumed he could safely enter the highway and make his turn to the east.

Pintar entered the highway and proceeded east, shifting the gears of his car. He testified in making the turn he did not cross the center line. The Ackerman car, whose lights he had seen approaching from the east, now passed him going west and when he was about 100 feet east of the driveway and had completed his shifting, Pintar felt a nudge or a tick on his car.

Laufenberg, who admits his negligence, testified he came around the curve from the west with Avina close behind him and shortly thereafter saw the Pintar car emerging from the driveway and blocking his lane of travel and one half of the westbound lane. He applied his brakes, but realizing he could not stop his car in time to avoid a collision he turned his wheels to the left. What then happened is unbelievably true. Laufenberg's car turned 180 degrees while remaining on the paved portion of the two-lane highway and continued east in the direction of its momentum, but backwards in the westbound lane. While proceeding in this way for some dis-

tance Laufenberg had what is best called, although with the rear end, a "head-on collision" with the front end of the oncoming westbound Ackerman car, which Laufenberg never saw. Laufenberg is not sure what happened to the cars after this impact.

Avina testified he was three to four car lengths behind Laufenberg just before the accident. There is other testimony that he was much closer. When he saw Laufenberg's brake lights go on he applied his brakes and turned to the right. He was unable to testify concerning the sequence of events, but from paint transfers and indentations on the cars it is a verity that the Laufenberg and Avina cars collided and the Avina and Ackerman cars collided. There is evidence from paint marks and physical damage that the Avina-Ackerman impact was not severe. After these collisions the Laufenberg car came to rest in the ditch south of the highway, facing south, the Avina car in the ditch on the north side of the highway, facing west and behind the Ackerman car which was also in the ditch, facing west. Pintar stopped his car on the south edge of the highway several hundred feet east of the driveway when he became aware of the collision behind him.

It was contended in the trial court and is urged here that Pintar was causally negligent both as to lookout and failing to yield the right-of-way to Laufenberg. The trial court found otherwise on the theory that Pintar could assume that Laufenberg was proceeding at a lawful rate of speed, which at the time and place of the accident was 50 miles per hour. The court also considered Pintar had concluded it was safe to enter the highway and his failure to judge the speed of the oncoming Laufenberg car was relatively unimportant.

The majority of the court, not including the writer and the chief justice, believes the finding exonerating Pintar of any negligence is not against the great weight and clear preponderance of the evidence. This view is

based upon two reasons: First, Laufenberg was 1,000 feet west of the driveway when Pintar entered and turned to the east. At that distance from the driveway Laufenberg was not "approaching" as that term is used in sec. 346.18 (4), Stats.,[1] so as to have a right-of-way to the road at and east of the driveway. Secondly, Pintar had a right to assume Laufenberg was proceeding at a lawful speed and the miscalculation failure which lead to his assumption it was safe for him to enter the highway was a reasonable miscalculation, or one he reasonably did not have to make because of the 1,000-feet distance of the Laufenberg car.

It is true, an experienced driver may almost unconsciously, in a fraction of a second, judge distance and speed of an oncoming car sufficiently to determine whether it is safe for him to proceed onto a highway and yet be unable to state exactly the oncoming car's distance in feet or rate of speed in miles per hour. Given a sufficient look, a calculation of speed and distance may be in error and yet be reasonable and thus not determinative of negligence. *Heinecke v. Hardware Mut. Casualty Co.* (1953), 264 Wis. 89, 94, 58 N. W. (2d) 442. In *Heinecke,* we pointed out that one charged with the duty of lookout had to exercise, after making his observation, reasonable judgment in calculating the time it would take him to enter and reach his proper position on the highway. This case espoused a reasonable calculation. In *Plog v. Zolper* (1957), 1 Wis. (2d) 517, 527, 85 N. W. (2d) 492, we again addressed ourselves to calculation and to the sufficiency of the observation as elements of lookout. In *Bowers v. Treuthardt* (1958), 5 Wis. (2d) 271, 275, 92 N. W. (2d) 878, we state almost categorically that "[f]ailure properly to evaluate what is seen is as

[1] "(4) ENTERING HIGHWAY FROM ALLEY OR NON-HIGHWAY ACCESS. The operator of a vehicle entering a highway from an alley or from a point of access other than another highway shall yield the right of way to all vehicles approaching on the highway which he is entering."

much an element of negligent lookout as not to see the source of the danger at all." The controlling element in the decisions is the reason for the incorrect conclusion that it was safe for the driver to proceed on the highway.

The minority of the court would hold Pintar negligent as a matter of law. Laufenberg was on an arterial highway and did not forfeit his right-of-way because of his excessive speed. *Magin v. Bemis* (1962), 17 Wis. (2d) 192, 199, 116 N. W. (2d) 129. Having the right-of-way, he was entitled to have the immediate use of his lane of the highway ahead of his car free from obstruction. The distance ahead which is appropriated by this right-of-way depends upon the speed of the car and not the lawfulness of the speed. In *Ide v. Wamser* (1964), 22 Wis. (2d) 325, 331, 126 N. W. (2d) 59, we stated a special dignity was afforded to one who was traveling upon an arterial. "In order to expedite traffic, the law permits drivers on arterial highways to proceed uninterruptedly at a lawful rate of speed with the assumption that other drivers approaching the arterial will yield to them." Since excessive speed does not forfeit the right-of-way on an arterial, one traveling at an excessive speed may proceed uninterruptedly with the assumption other drivers approaching the arterial will yield.

The negligence of one using excessive speed on an arterial does not excuse one approaching the arterial for not yielding the right-of-way. *Magin v. Bemis, supra.* In *Magin,* we defined a vehicle on an arterial as approaching an intersection when it was not so far distant that considering the rate of speed at which the car is traveling it would be reasonable to assume that a collision would occur if a vehicle stopped at the intersection on the nonarterial were to start in motion and move into the path of the vehicle on the arterial. This correctly implied for the purpose of determining right-of-way that the driver on the arterial was not required to brake his car. This right was not conditioned upon lawful speed.

The minority believes Pintar had no right to rely on the assumption that Laufenberg was proceeding at a lawful rate of speed on the arterial because this in effect denies the right-of-way to Laufenberg. Besides, the duty to yield the right-of-way does not end when one enters the highway and assumes his position if by doing so the oncoming car's speed must be drastically reduced to avoid a rear-end collision. The right-of-way on an arterial means the right to immediately use the road ahead without being required to brake your car in order to accommodate another entering the highway. One entering an arterial must be reasonably sure he can enter into the flow of the traffic thereon without disrupting it. To disrupt the flow of traffic is to create a traffic hazard. The minority thinks Pintar was causally negligent in entering the highway without ascertaining that Laufenberg was coming at an excessive speed and in blocking the path of the Laufenberg car by not accelerating faster than he did. From Pintar's testimony, he traveled 100 feet while Laufenberg traveled 1,000. If Laufenberg was going 80 miles per hour, Pintar only averaged 8 miles per hour.

There can be no question but that Avina was negligent. The trial court found him negligent as to speed, lookout and following Laufenberg too closely. The evidence of his negligence in all these respects is overwhelming. Avina claims his negligence was not causal or, if it was, he was not as causally negligent as Laufenberg. He argues that if he had not been following Laufenberg the same damage for which the claim was made would have occurred, because the impact of the Laufenberg car going backward and colliding with the Ackerman car was sufficient to cause the death of Mrs. Ogle. He also contends from the paint transfers and slight damage to his car that the impact of his car with the Ackerman car was so slight as not to aggravate the injuries or contribute to the death of Mrs. Ogle.

We think counsel for Avina has an erroneous concept of causation. The severity of an impact is only one link. It is true, illegal racing was not pleaded as required by *Giemza v. Allied American Mut. Fire Ins. Co.* (1960), 10 Wis. (2d) 555, 560, 103 N. W. (2d) 538, 106 N. W. (2d) 609, and therefore was not an issue. If racing had been pleaded and proved, the damage done by the Laufenberg car during the race would also have been attributable to Avina regardless of whether Avina's car had struck the Ackerman car. In a race, the participants share equally the responsibility for damage done by any participant. *Nelson v. Nason* (1961), 343 Mass. 220, 177 N. E. (2d) 887; *Haddock v. Stewart* (1963), 232 Md. 139, 192 Atl. (2d) 105, 107; 60 C. J. S., Motor Vehicles, p. 702, sec. 297, racing. This shared responsibility is founded upon the mutual understanding which gives rise to the race, and the race is considered to be the basic cause of the damage and injury resulting from any act of negligence of a participant. The fragmentation of cause into the severity of impacts for apportionment purposes is unrealistic. It is the negligence considered as a whole including its character and nature which must be considered in contributing to the cause of the collision.

Laufenberg met Avina by prearrangement at a tavern in Rock county after work on the night of the accident. After having several beers they decided to visit a cocktail bar in the city of Milwaukee and started out for that destination. Avina was in the lead and prior to the accident, some miles away from the starting point, Laufenberg passed Avina, Avina in turn passed Laufenberg, and Laufenberg passed Avina a second time, at an admitted speed of 80 miles per hour. After this last passing, Avina and Laufenberg traveled east on Highway 15 toward their common destination almost as one car, or as cars in tandem.

A traffic officer testified he was going west on Highway 15 about two miles west of the scene of the accident

when Laufenberg and Avina going east passed him at a speed estimated at 80 miles per hour and Avina was only one car length behind Laufenberg. The officer turned around and pursued them but did not catch up with them until the accident had happened.

We think when there is an understanding to reach a common destination and in doing so illegal speed is used and the cars are driven so closely together as to be practically in tandem, or to constitute a unit, that we have a situation of mutual stimulation where the negligence of each participant is so related to the negligence of the other participants that the participants should each be chargeable with the causal negligence of the other as to speed and their percentage of causal negligence should be equal. The apportionment rule of causal negligence applicable to the usual cases of independent tort-feasors whose negligence combined or concurred in some manner to cause a result requires in the instant case as a matter of law, because of the mutual fault of Laufenberg and Avina, that the causal negligence be apportioned equally between them.

The trial court so held and we think correctly; therefore, the judgment should be affirmed.

*By the Court.*—Judgment affirmed.

GORDON, J. (*concurring*). Racing upon a highway was made illegal by the legislature. Sec. 346.94 (2), Stats. If racing is to be relied upon as a basis for negligence, the pleadings must allege such claim. *Giemza v. Allied American Mut. Fire Ins. Co.* (1960), 10 Wis. (2d) 555, 560, 103 N. W. (2d) 538, 106 N. W. (2d) 609. The legislature has not, however, proscribed two drivers from going to a prearranged place, but this court in a case in which the issue was not pleaded nevertheless now announces a rule which declares that one driver who speeds to a common destination with another may be charge-

able with the latter's negligence and be found equally at fault as a matter of law.

I agree that the judgment should be affirmed; under the "great weight and clear preponderance of the evidence" rule, the finding of the trial court that Mr. Laufenberg and Mr. Avina were equally negligent is entirely sustainable. However, the majority opinion adopts a new and debatable concept of equal negligence for "tandem drivers" which I believe to be unnecessary to this decision.

I am authorized to state that Mr. Justice HEFFERNAN joins in this concurring opinion.

CURRIE, C. J. (*dissenting*). I respectfully dissent from the opinion of the court.

First, I am one of the minority mentioned therein who would hold Pintar negligent as a matter of law in failing to make any adequate observation to calculate the speed of the Laufenberg car before entering upon the arterial highway.

Secondly, absent any pleading or finding of racing on the part of Avina and Laufenberg, there is no basis for finding Avina guilty of the same percentage of *causal* negligence as Laufenberg. I join Mr. Justice GORDON and Mr. Justice HEFFERNAN in disagreeing with the basis upon which the majority opinion grounds its affirmance of the trial court's finding in this respect. If this basis as well as that of racing is eliminated, there is no credible evidence to sustain the trial court's finding of causal negligence on the part of Avina which contributed to the death of Mrs. Ogle. This is because the contact between the Avina and Ackerman cars was minimal with only a scraping of paint.

I agree that, if two motor vehicles successively collide with a third vehicle in close proximity of time and someone is injured or killed in the latter vehicle, and either

collision standing alone would be sufficient to cause the injury or death, negligence of the drivers of the first two vehicles should be held causal in a situation where it is impossible to determine which collision caused the injury or death. However, that is not the case here because there was insufficient contact between the Avina and Ackerman cars to bring this rule into play.