Nos. 2--96--1328, 2--96--1348, 2--96--1353 cons. 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

MARY E. CLAUSEN and ROBERT E. ) Appeal from the Circuit Court

CLAUSEN, ) of De Kalb County.

)

Plaintiffs-Appellants, ) 

)

v. ) No. 95--L--35

)

RANDY L. CARROLL, Adm'r of the )

Estate of Jason L. Carroll,     )

Deceased, and RYAN K. CHAPMAN, ) Honorable

               ) John W. Countryman,

Defendants-Appellees. ) Judge, Presiding.

________________________________________________________________

FRENCH TAYLOR, Indiv. and as ) Appeal from the Circuit Court

Special Adm'r of the Estate of ) of De Kalb County.

Jennifer Taylor, Deceased, ) 

)

Plaintiff-Appellant, )

)

v. ) No. 95--L--65

       )

RANDY L. CARROLL, Adm'r of the )

Estate of Jason L. Carroll,     )

Deceased, and RYAN K. CHAPMAN, ) Honorable

               ) John W. Countryman,

Defendants-Appellees. ) Judge, Presiding.

________________________________________________________________

ALBERT KARL, Indiv. and as ) Appeal from the Circuit Court

Special Adm'r of the Estate of ) of De Kalb County.

Jason Karl, Deceased, ) 

)

Plaintiff-Appellant, )

)

v. ) No. 95--L--64

       )

RANDY L. CARROLL, Adm'r of the )

Estate of Jason L. Carroll,     )

Deceased, and RYAN K. CHAPMAN, ) Honorable

               ) John W. Countryman,

Defendants-Appellees. ) Judge, Presiding.

________________________________________________________________

   

    PRESIDING JUSTICE GEIGER delivered the opinion of the court:
 

   These consolidated negligence actions arise from a two-vehicle automobile collision occurring on January 14, 1995, at Harmony Road in McHenry County, Riley Township.  Jason Carroll was driving one of the vehicles and was killed in the accident.  His passengers, Jennifer Taylor and Jason Karl, were also killed.  The other vehicle involved in the collision was driven by Robert Clausen.  Both he and his passenger, Mary Clausen, were seriously injured in the accident.  During the collision, Carroll was allegedly engaged in a drag race with a third vehicle being driven by Ryan Chapman.  The collision occurred when Carroll's vehicle crossed into the oncoming lane of traffic and struck Clausen's vehicle.  Chapman's vehicle was not physically involved in the collision.

Mary Clausen, Robert Clausen, Albert Karl, individually and as special administrator of the estate of Jason Karl, deceased, and French Taylor, individually and as special administrator of the estate of Jennifer Taylor, deceased (collectively referred to as the plaintiffs), subsequently filed negligence actions against the estate of Jason Carroll (Carroll's estate) and against Ryan Chapman.  Chapman's liability was predicated upon his participation in the drag race with Carroll during the collision.  The trial court entered summary judgment on Chapman's behalf, finding that his conduct had not been the proximate cause of the accident.  On appeal, the plaintiffs argue that the issue of causation was a factual determination which should have been resolved by a jury.  We reverse and remand.

On March 1, 1995, Mary Clausen and Robert Clausen filed a four-count complaint against Chapman and Carroll's estate.  The Clausens alleged that, at approximately 11 p.m., on January 14, 1995, Chapman and Carroll were engaged in a high-speed race on North State Road and Harmony Road in McHenry County, Riley Township.  North State Road is a two-lane roadway which runs north and south and which terminates at a T-intersection with Harmony Road.  A stop sign faces northbound traffic on North State Road at this intersection.  Harmony Road is a two-lane roadway which runs east and west until a point where it curves northbound and becomes County Line Road.  This curve is about one-half mile west from the T-intersection of North State Road and Harmony Road.  County Line Road is a two-lane roadway which runs north and south until the point where it curves eastward to become Harmony Road.  

The Clausens alleged that, immediately prior to the collision, they had been travelling southbound on County Line Road and then eastbound on Harmony Road.  At the point where County Line Road turns eastbound to become Harmony Road, Carroll's vehicle, which had been travelling westbound on Harmony Road, allegedly crossed the eastbound lane and struck the Clausens' vehicle.  The Clausens' complaint alleged that Carroll was negligent in one or more of the following ways:  (1) that he drove his vehicle in a reckless manner; (2) that he drove his vehicle at a high rate of speed; and (3) that he improperly engaged in drag racing with another vehicle.  The complaint also alleged that Chapman's conduct was a proximate cause of the accident.  Specifically, the Clausens alleged that Chapman had acted negligently:  (1) by driving a vehicle in competition with another vehicle on a public roadway; and (2) by challenging and encouraging another vehicle to engage in a high-speed race.

On April 24, 1995, Albert Karl, individually and as special administrator of Jason Karl's estate, and French Taylor, individually and as special administrator of Jennifer Taylor's estate, filed wrongful death and survival actions against Carroll's estate and against Chapman.  These complaints were predicated upon the same allegations of negligence as those contained in the Clausen complaint.  Chapman and Carroll's estate subsequently filed answers to each of these complaints, denying any liability in connection with the collision. 

On October 16, 1995, Chapman filed a motion to consolidate the three cases.  On October 30, 1995, the trial court granted the motion and consolidated the cases for discovery purposes only.

On August 5, 1996, Chapman filed a motion for summary judgment in each of the cases pending against him.  Chapman argued that summary judgment was appropriate because there was no evidence demonstrating that his conduct was the proximate cause of the collision between the Carroll and Clausen vehicles.  In support of his motion, Chapman attached a copy of his deposition transcript as well as the deposition transcripts of Robert Clausen, Mary Clausen, Michael Hobson, Nicholas Scherer, and Michael Carter.  The testimony contained in these depositions is summarized below.  

Robert Clausen testified that, prior to the collision, he was travelling southbound on County Line Road.  His wife, Mary Clausen, was a passenger in his vehicle at the time.  As his vehicle reached the curve at County Line Road and Harmony Road, he saw headlights from a vehicle coming from his lower left field of vision.  Almost immediately after he saw the headlights, an approaching vehicle collided into his car.  At the time of the collision, his vehicle was entirely in the right-hand lane.

Mary Clausen testified that she was a passenger in a vehicle being operated by her husband at the time of the collision.  She testified that the vehicle in which she was riding was in the right lane at the moment of impact.  It was not until the moment of impact that she saw headlights from the other vehicle that was involved in the accident.  Aside from the other vehicle, she did not see any other headlights or vehicles in the vicinity at the time of the collision.

Michael Hobson testified that, on the evening of the accident, he was driving northbound on North State Road out of Genoa.  He testified that his vehicle was passed by a blue Mustang and a white Grand Prix.  As the vehicles passed him, rocks were thrown up on his car, and he increased his speed in an attempt to catch up with them.  As he observed the two cars in front of him, he noticed that they were "leap-frogging" (each vehicle repeatedly passing one another).  He then observed the two vehicles slow down to a stop, one in the northbound lane and the other in the southbound lane.  As his vehicle drew closer, the two vehicles took off.  

Hobson continued to follow the two vehicles on North State Road until they arrived at the T-intersection with Harmony Road.  He observed that both vehicles disregarded the stop sign and turned left onto Harmony Road.  Both vehicles accelerated and travelled westbound on Harmony Road at a fast rate of speed, with the Mustang travelling faster than the Grand Prix.  When he arrived at the T-intersection, Hobson also turned his vehicle left and proceeded westbound on Harmony Road.  Hobson saw the Mustang disappear into a curve.  Although Hobson lost sight of the Mustang, he was still able to observe the Grand Prix, which he estimated was five or six car lengths behind the Mustang. 

Nicholas Scherer testified that he was a passenger in Michael Hobson's vehicle on the evening of the accident.  He testified to substantially the same facts as Hobson.  Scherer additionally testified, however, that when the two cars that had passed Hobson's turned onto Harmony Road the lead car was travelling at a speed of 70 to 75 miles per hour and the other vehicle was travelling at 65 to 70 miles per hour.  He testified, however, that both vehicles appeared to be gaining speed before they reached the curve at Harmony Road and County Line Road.

Michael Carter testified that, on the evening of the accident, he, Chapman, Carroll, and their friends were at his house.  After they had a brief conversation as to what they should do that evening, Carroll suggested that they go for a ride and told Chapman to follow him.  Carter testified he rode in Chapman's vehicle and that they followed Carroll onto North State Road.  Carter testified that, while they were travelling northbound on North State Road, Chapman and Carroll passed each other twice at a speed of between 65 and 70 miles per hour.  After reaching the T-intersection with Harmony Road, Carroll turned left, followed by Chapman.  Carter testified that while on Harmony Road both vehicles stayed in the westbound lane of traffic and that Chapman's maximum rate of speed was 45 miles per hour.  Carter testified that he saw Carroll's vehicle disappear into a curve.  At the moment he lost sight of the Mustang, Chapman's vehicle was still six to eight seconds behind.  Although Carter did not see the accident, he was able to hear the collision.

Ryan Chapman testified that on the night of the accident he was driving a white Grand Prix.  He testified that, prior to the accident, he was at Carter's house when Carroll pulled up in a blue Mustang.  Carroll told Chapman to follow him because Carroll wanted to show him something.  Chapman got into his vehicle and followed Carroll onto North State Road.  While on North State Road, Carroll moved his vehicle into the oncoming lane of traffic in order to allow Chapman to drive his vehicle parallel to Carroll's.  Chapman testified that his maximum rate of speed at this time was 75 to 80 miles per hour.  Upon reaching the stop sign at Harmony Road, Carroll brought his vehicle to a stop in the northbound lane.  Chapman then pulled up to the right of Carroll's vehicle and stopped.  The three occupants of Carroll's vehicle signaled for Chapman to turn left onto Harmony Road.  

Chapman testified that, after he turned left onto Harmony Road, he maintained "a pretty far distance" behind Carroll and was driving 50 to 55 miles per hour.  He testified that he could not estimate Carroll's speed.  Chapman further testified that he did not see the collision between the two vehicles.

On August 15, 1996, Carroll's estate settled all of the actions pending against it by tendering the entirety of Carroll's automobile coverage.  The insurance proceeds were allocated among the plaintiffs in the three cases, and the trial court subsequently entered an order dismissing Carroll's estate from each of the actions.

On August 30, 1996, Robert Clausen and Mary Clausen filed their response to Chapman's motion for summary judgment.  They argued that summary judgment was improper because a reasonable jury could find that Chapman's conduct was a proximate cause of the collision between Carroll and the Clausens.  They argued that the evidence demonstrated that Chapman had encouraged Carroll to engage in high-speed driving, lane switching, and recklessness. 

On September 6, 1996, Albert Karl and French Taylor filed a joint response to Chapman's motion for summary judgment.  They also contended that a jury could find that Chapman's actions were a proximate cause of the plaintiffs' injuries.  They argued that, although Chapman was not physically involved in the accident, he had encouraged and acted in concert with Carroll.

In his reply brief, Chapman argued that summary judgment was proper because there was no evidence that he had challenged or encouraged Carroll to drive his vehicle at a high speed prior to the accident.  Chapman argued that, as a matter of law, his conduct prior to the accident was irrelevant in determining the proximate cause of the collision.  Chapman further argued that the plaintiffs' allegations against him were based on speculation, guess, and conjecture. 

On October 17, 1996, the trial court granted Chapman's motion for summary judgment.  The trial court found that, as a matter of law, Chapman's conduct was not a proximate cause of the accident.  The plaintiffs in each of the suits subsequently filed a timely notice of appeal.  On December 9, 1996, this court issued an order consolidating these appeals.

On appeal, the plaintiffs argue that the trial court erred in entering summary judgment when there existed a question of fact as to whether Chapman and Carroll were engaged in a joint concerted tortious activity at the time of the collision.  Specifically, the plaintiffs argue that Chapman's participation in the drag race created the dangerous circumstances that caused the collision.  In support of their contention, the plaintiffs rely on section 876 of the Restatement (Second) of Torts (the Restatement) (Restatement (Second) of Torts §876 (1979)) and this court's holding in 
Sanke v. Bechina
, 216 Ill. App. 3d 962, 964-65 (1991). 

At the outset, we note that the purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists (
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986)) and that such a motion should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2--1005(c) (West 1996)
).  An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law.  
In re Estate of Herwig
, 237 Ill. App. 3d 737, 741 (1992).  The disposition of a summary judgment motion is not discretionary and the standard of review is 
de
 
novo
.  
Quinton v. Kuffer
, 221 Ill. App. 3d 466, 471 (1991).

The primary question we must resolve is whether all participants in a drag race can be held equally liable for any injury resulting from such a race, even when the participant being sued did not physically cause the injury.  Generally, a person other than a driver is not liable for damages caused by the negligent acts of the driver unless that person is the owner of the vehicle or has the right to control that vehicle.  
Sanke
, 216 Ill. App. 3d at 963-64.  Illinois courts have held that, where one neither owns the car nor hires the driver, the driver is the only one who can prevent injury to others.  
Sanke
, 216 Ill. App. 3d at 964.  However, one may be held liable for the negligent acts of the driver if that individual is found to be acting in concert with the driver.  
Sanke
, 216 Ill. App. 3d at 964-65.  Under section 876 of the Restatement, one is liable for the tortious conduct of another if he:

"(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."  Restatement (Second) of Torts §876 (1979).

Pursuant to this language, one will be held liable for the injuries that flow from his participation in a joint concerted tortious activity, if that activity was the proximate cause of the plaintiff's injuries.  See 
Sanke
, 216 Ill. App. 3d at 964-65.  

In order to determine whether a defendant's negligence proximately caused a plaintiff's injury, the trial court must consider:  (1) whether the defendant's negligence was a cause in fact of the injury; and (2) whether the defendant's negligence was sufficiently connected with the injury so that, given considerations of justice or policy, the defendant should be held liable for the injury.  
Smith v. Armor
 Plus Co.
, 248 Ill. App. 3d 831, 840 (1993).  The plaintiff has the burden to satisfy each of these two prongs of inquiry.  
Smith
, 248 Ill. App. 3d at 840.  What constitutes the proximate cause of an injury is ordinarily a question of fact to be decided by the jury; such an issue can only be resolved as a matter of law in those instances where there are no 
differences in the inferences to be reasonably drawn from the undisputed facts.  
Smith
, 248 Ill. App. 3d at 840. 

In 
Sanke v. Bechina
, 216 Ill. App. 3d 962, 964 (1991), this court considered the appropriate application of section 876 of the Restatement in the context of an automobile accident.  In 
Sanke
, the defendant was riding as a passenger in the front seat of a vehicle, and the plaintiff's daughter was riding as a passenger in the backseat.  
Sanke
, 216 Ill. App. 3d at 963.  The defendant verbally encouraged the driver of the vehicle to exceed the posted speed limit and to disregard a stop sign.  
Sanke
, 216 Ill. App. 3d at 963.  The defendant also used physical gestures to encourage the driver's reckless operation of the vehicle.  
Sanke
, 216 Ill. App. 3d at 963.  Subsequently, the driver lost control of his vehicle and the plaintiff's daughter died in the resulting accident.  
Sanke
, 216 Ill. App. 3d at 963.  The trial court dismissed the plaintiff's complaint for failure to state a cause of action.  
Sanke
, 216 Ill. App. 3d at 963.  

This court reversed the trial court's dismissal, holding that the defendant's alleged conduct could constitute a joint concerted tortious activity as defined under section 876 of the Restatement.  
Sanke
, 216 Ill. App. 3d at 971.  We determined that it was for the trier of fact to determine whether the defendant had substantially encouraged the driver's recklessness so as to impose liability on the defendant.  
Sanke
, 216 Ill. App. 3d at 971.

Aside from this court's holding in 
Sanke
, there are few Illinois cases discussing the possibility of contributing tort-feasors in the context of an automobile collision.  Indeed, we are aware of no Illinois case that has addressed whether section 876 of the Restatement is persuasive in the context of a drag racing accident.  Several other states, however, have addressed this precise issue and have held that all participants in a drag race may be held liable for the damages caused by one of them.  
See 
Annotation, 
Liability of Participant in Unauthorized Highway Race for Injury to Third Person Directly Caused by Other Racer
, 13 A.L.R.3d 431, 434-35 (1967 & Supp. 1996) (listing 22 states in which courts have held that all the participants in an illegal drag race are liable in negligence for injuries caused by one of them).  For example, in 
Ogle v. Avina
, 33 Wis. 2d 125, 134, 146 N.W.2d 422, 426-27 (1966), the defendant was engaged in a high-speed race against another vehicle.  The driver of the other vehicle was subsequently involved in a fatal collision with the plaintiff's wife.  
Ogle
, 33 Wis. 2d at 133, 146 N.W.2d at 426.  The trial court found that the defendant could be held jointly liable with the driver of the other vehicle.  
Ogle
, 33 Wis. 2d at 135, 146 N.W.2d at 427.  The Wisconsin Supreme Court affirmed, holding that, "[i]n a race, the participants share equally the responsibility for damage done by any participant."  
Ogle
, 33 Wis. 2d at 134, 146 N.W.2d at 426.  The court explained: 

"This shared responsibility is founded upon the mutual understanding which gives rise to the race, and the race is considered to be the basic cause of the damage and injury resulting from any act of negligence of a participant."  
Ogle
, 33 Wis. 2d at 134, 146 N.W.2d at 426.

In 
Boykin v. Bennett
, 253 N.C. 725, 726, 118 S.E.2d 12, 13 (1961), the plaintiff's husband was a passenger in a vehicle involved in a three-car drag race.  The plaintiff's husband was killed when the vehicle in which he was riding was involved in an accident.  
Boykin
, 253 N.C. at 726, 118 S.E.2d at 13.  The plaintiff sued the drivers of all three vehicles, alleging that they were concurrently negligent in causing the death of her husband.  
Boykin
, 253 N.C. at 726, 118 S.E.2d at 13.  After the trial court dismissed the action, the North Carolina Supreme Court held that the action was proper and reinstated the plaintiff's complaint.  
Boykin
, 253 N.C. at 727, 732, 118 S.E.2d at 13, 17.  After reviewing the law of other jurisdictions, the court explained:

"Those who participate [in a drag race] are on a joint venture and are encouraging and inciting each other.  The primary negligence involved is the race itself.  All who wilfully participate in speed competition between motor vehicles on a public highway are jointly and concurrently negligent and, if damage to one not involved in the race proximately results from it, all participants are liable, regardless of which of the racing cars actually inflicts the injury."  
Boykin
, 253 N.C. at 731-32, 118 S.E.2d at 17.   

We find these authorities persuasive and a logical extension of our holding in 
Sanke
.  As noted above, in 
Sanke
, we held that a passenger who encourages another to drive in a reckless manner may be found jointly liable for that individual's negligence.  
Sanke
, 216 Ill. App. 3d at 971.  We believe that a drag race is a joint venture where all participants have encouraged one another to engage in reckless conduct.  
See 
Ogle
, 33 Wis. 2d at 134, 146 N.W.2d at 426; 
Boykin
, 253 N.C. at 731-32, 118 S.E.2d at 17.  We can ascertain no practical difference between the defendant's tortious conduct in 
Sanke
 and the manner in which Chapman allegedly encouraged Carroll to drive recklessly by participating in a drag race with him.  Consequently, we find that Chapman can be held liable if it is found that he engaged in a joint concerted tortious activity with Carroll and that the alleged injuries were the result of the activity. 

We note that such a holding comports with the public policy of this state as codified in the Illinois Vehicle Code (the Code) (625 ILCS 5/11--500 
et seq.
 (West 1996)).  Section 11--504 of the Code expressly provides: 

"Any person who, as an operator of a motor vehicle, is convicted of being a participant in drag racing shall be guilty of a Class C misdemeanor, and the driver's license of such person shall be revoked in the manner provided by Section 6--205."  625 ILCS 5/11--504 (West 1996).

The language of this section reflects the legislature's desire to protect the safety of drivers of other automobiles and pedestrians who use the state's streets and highways.  
People v. DeMarino
, 72 Ill. App. 2d 38, 44 (1966).  Illinois courts have consistently held that the violation of such a statute designed for the protection of human life or property is 
prima facie
 evidence of negligence.  
Smith
, 248 Ill. App. 3d at 839.  We therefore conclude that our holding will further this public policy which discourages participation in drag racing.

A review of the record in the instant case demonstrates the existence of facts from which a jury could reasonably conclude that, at the time of the collision, Chapman and Carroll were engaged in a joint concerted tortious activity.  During his deposition, Chapman acknowledged that both he and Carroll were travelling at 75 to 80 miles per hour on North State Road and that on two occasions they were driving parallel to one another.  Michael Hobson and Nicholas Scherer both testified that Carroll and Chapman turned left onto Harmony Road and continued their race without stopping at the stop sign.  Scherer testified that both vehicles were going at a high rate of speed on Harmony Road and were continuing to accelerate as they approached the curve.  Michael Carter, a passenger in Chapman's car, testified that Chapman was so close to the accident that Carter could hear the collision between the Carroll and the Clausen vehicles.

Furthermore, even if the collision did not occur while Chapman and Carroll were actually engaged in the alleged race, there is evidence from which a jury could conclude that the collision was a natural or foreseeable result of the alleged race.  Immediately before Carroll's vehicle entered the curve at Harmony Road and County Line Road, Hobson and Scherer testified that Carroll was going at a high rate of speed.  Robert Clausen and Mary Clausen both testified that their vehicle was in the proper lane when it was suddenly struck by Carroll's vehicle, which had crossed into their lane.

Based on such evidence, we conclude that there are several issues of material fact that preclude the entry of summary judgment.  It will be for the jury to determine whether Chapman and Carroll were engaged in a drag race and whether such activity had ended by the time Chapman and Carroll had reached Harmony Road.  It will also be for the jury to determine whether the collision was the direct result of the alleged drag race or whether it was the result of the independent negligence of Carroll.  As the plaintiffs have raised a genuine issue of material fact as to whether Chapman was engaged in a joint concerted tortious activity that caused the deaths and injuries in the instant collision, the trial court's entry of summary judgment on Chapman's behalf was improper as a matter of law.  

For the foregoing reasons, the judgment of the circuit court of De Kalb County is reversed, and the cause is remanded for further proceedings consistent with this decision.

Reversed and remanded.

INGLIS and McLAREN, JJ., concur.