Rocco v. Tillia, Appellant.

Argued April 19, 1932.

Before TREX-
LER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALD-
RIGE, STADTFELD and PARKER, JJ.

*J. Norman Martin* and with him *Norman A. Martin,*
of *Martin & Martin,* for appellant.

*William D. Cobau,* and with him *W. Walter Braham*
and *J. Glenn Berry,* and *Aiken & Braham,* for ap-
pellee.

OPINION BY STADTFELD, J., October 10, 1932:

This was an action of trespass for personal injuries
sustained and a verdict resulted in favor of plaintiff.
The court refused a motion for judgment n. o. v. which
has been assigned for error.

The accident complained of occurred on the road
leading in a southerly direction from New Castle to

the Borough of Ellwood City. This is an improved state highway with a concrete driveway eighteen feet in width. The place where the accident occurred was at a point where there were farms on both sides of the road, the neighborhood being a farming community. Plaintiff was operating an automobile over this road, going in a southerly direction. When he had reached a point about five miles from the city of New Castle, he claimed that the brakes on one of the wheels of his automobile locked and caused his automobile to slip off the highway into the ditch on his left hand side, or the east side of said highway. It had been raining and snowing during the day, and it was snowing at the time of the accident. The plaintiff summoned a wrecking car owned by S. H. Stillwagon, who shortly thereafter arrived at the scene of the accident. The wrecking car was put in position so that it was headed north with its rear end towards the car that was in the ditch. Its left front wheel was on the concrete highway and the rear wheels on the berm. Before beginning the work of lifting the car out of the ditch, Stillwagon posted men two hundred feet in either direction on the road to warn approaching automobiles. At the time it was dusk or dark. There was room on the concrete road for a car to pass between the west edge of the concrete road and the wrecking car. Plaintiff was assisting Stillwagon in raising the automobile when the defendant approached driving in a northerly direction. Plaintiff was on the southerly side of the wrecker and Stillwagon was between the wrecker and the car in the ditch. Defendant testified that he did not see the wrecker until he was nine feet from it and attempted to stop his car, but on account of the slippery condition of the road was unable to do so, and his car struck the plaintiff and injured him, and also struck the wrecker.

According to plaintiff's testimony, the road was level about 350 or 400 yards of a straight stretch north

to south from the point of the accident; that the lights in the wrecking car were lit; it was parked in a diagonal manner facing towards New Castle; that the left half of the highway was unobstructed and open for traffic; that fifteen or twenty cars passed him after the wrecker arrived and before he was injured. He was working the hoist on the wrecker at the time, standing alongside on the concrete. Stillwagon was to the rear of the wrecker, fastening the chain; he did not know whether there were any lights on the side of the wrecker. He claimed the accident occurred between five-thirty and six, or six-fifteen; that it was just dusk. He did not have the lights on his car lit while he was driving before the accident, but lit them when the car was in the ditch.

Stillwagon, owner of the wrecking car, testified that the road is level south of the point of collision close to a half mile, and a quarter of a mile in the opposite direction; that it was snowing, rain with snow and some snow on the driving surface; that the two rear wheels of his wrecking car were off the concrete, the right front wheel was off the concrete, the left front wheel was on the concrete. While working in between the wrecker and the ditched car, standing by the edge of the cement, he was struck. He had, when he first came there, directed two men, one to go to the New Castle side, and the other to the Ellwood City side, to caution traffic. They went out the first thing after he got there. He did not remember whether the lights were lit on his truck; to his recollection they were not. The accident, he said, occurred a few minutes past six in the evening; it wasn't dark, but it was getting dusk. He did not hear any warning sounded by the defendant before he was struck. The left rear fender of his truck was smashed, three spokes smashed in the rear wheel. He saw the man he had sent towards Ellwood a couple of hundred feet away ten or fifteen minutes before the crash.

Joseph Pratt, who had been in the car with plaintiff, testified that he had been sent by Stillwagon to direct traffic on the south side of the wreck, and that he had gone 250 or 300 feet south, and directed traffic coming along from Ellwood City; that five or ten cars had passed from the direction of Ellwood City after the wrecker came and before the collision; that he saw the defendant coming, and witness, while on the right hand side of the pavement, threw both arms out and waved him down; that defendant's lights showed, and witness thought he was slacking down; he saw that he was coming at a pretty good speed, and witness fell in the ditch; by the time he picked himself up, he heard the crash as defendant's car hit. He could not tell the speed at which defendant's car was coming.

Nick Cannavine, who also was in plaintiff's car before the accident, testified that he had been sent by Stillwagon to the side towards New Castle, and that he went about 150 yards in that direction. That 15 or 20 cars passed the wrecker before the collision which he says occurred a little past six o'clock.

Charles W. Rocco, a brother of plaintiff, testified that he was called to the scene of the accident by plaintiff, and arrived there before the wrecker. That two men had been ordered out, one in either direction to slow up the traffic; that he was standing between the wrecker and the wrecked car, right beside plaintiff, directing the traffic. His first attention directed to defendant's car was when Pratt yelled for him to stop; he then noticed Pratt fall or slip over in the ditch; witness then ran around and waved his hands to caution defendant, for the latter couldn't get stopped, and he hit Stillwagon and pinned plaintiff between the wrecker and the bumper of defendant's car. When he first noticed defendant's car about 200 feet away, it was traveling at the rate of thirty-five miles an hour, and just before the crash about fifteen miles an

hour; he saw defendant's car "weaving" when it was 150 feet away; defendant's lights were not burning.

For the defense, defendant tesified that on the occasion in question he was driving an Oldsmobile car, and had left Ellwood City for New Castle around about a quarter of seven; that before leaving his home, his daughter had cleaned the headlights of his car before he started; that the headlights were lit when he left home; that it was snowing at the time, and continued snowing until after the accident; that it was snowing enough immediately prior to the accident to obstruct his vision along the highway; that it was dark at that time; that he was driving at not exceeding twenty miles an hour at any time; he denied that, as he approached the place of the accident, any person stopped him or gave any signal to stop; his first knowledge of any obstruction on the road ahead of him was when he saw the wrecking car just as he was about onto it; that he had his car under control; that his lights were burning at the time of the accident and afterwards; the wrecking car was standing diagonally across the road, the left hind wheel was sitting on the concrete, the front wheels were extending clear out into the center of the road; that he was driving on the right side of the road; that he saw Charles Rocco that evening, and he told witness that he didn't see the accident. He further testified that the minute he saw the wrecker, he applied his brakes and stopped as soon as possible; that when he first saw it, he wasn't over eight or nine feet away, on account of the snowing and the car's lights facing him and blinding him a little; that he had standard headlight device on his car, and that it would throw a reflection thirty or forty feet.

James A. Brady, a witness on behalf of defendant, testified that he approached the scene of the accident a few minutes after it happened; that defendant's car was still standing on the right side of the road

with the lights burning and at the particular time it was still snowing quite heavily.

Paul Simmons, a witness on behalf of defendant, testified that he was passing along the New Castle-Ellwood City Road on the evening of March 4, 1928, when a wrecking car was standing on the road; this was about a quarter to seven in the evening, and snowing hard at the time so as to obscure or partly obscure his vision; he did not see any watchman along the road to give signals; that as he approached the spot where the wrecker was, the wrecker was so far across the road that he had to leave the road to get around it.

Roy Porter testified that he was with Paul Simmons in the latter's automobile at the time to which the latter testified; that he did not see the wrecking car until they were almost onto it, about ten or fifteen feet away; that he did not see any watchman or any one giving any notice of danger ahead, that it was snowing sufficiently hard to obstruct vision to some extent; it was between dusk and darkness as they approached the machine between six-thirty and seven.

The court refused the request ex parte defendant for binding instructions, and submitted the case to the jury in a charge which carefully reviewed the testimony on both sides. The court instructed the jury that they could not base a finding of negligence on part of defendant on the fact alone as to the rate of speed at which he was traveling, but it was for the jury to determine whether the driving of the car at the rate of speed testified to under the conditions as they were at the time would constitute negligence; that if the jury should find that the defendant did not have his car under proper control, that he was not keeping a proper and adequate look-out for those who might be upon the highway ahead of him, that a signal to stop was given him and disregarded by him, they would be warranted in finding that he was guilty of negligence, and if that negligence brought about the injury, plain-

tiff would be entitled to recover; that if from the evidence on behalf of defendant the jury should find that the accident was unavoidable, that he was not guilty of any negligence, but was exercising all the care that was required of him under the circumstances, and that the accident was occasioned by the wrecker's car being in the road at that time without lights, or if they should find from the evidence that the accident resulted from the truck of the plaintiff being there in the road without lights at such time as lights were required, they should find for defendant.

The court called particular attention to the dispute as to the time of the accident, and to the provisions of the act of assembly requiring certain lights at certain hours, and that there was no contention that the wrecker was equipped as provided in the act of assembly for cars parked or stopped upon the highway during the hours requiring lights. That it was for them to determine the time of the accident and make application of the statute to determine whether or not there was a violation of the statute in that respect, and if it was violated that constituted negligence on the part of those in charge of the wrecker.

The court instructed the jury that ''it would appear that Stillwagon and the plaintiff were both employed about the wrecker in handling the wrecker in an effort to get plaintiff's car back on the highway; and if the accident occurred because there were no lights on the wrecker, that wouldn't be the default of the defendant, it wouldn't be anything for which he would be liable, but would be something over which he had no control; and it wouldn't be negligence on his part.''

Under these instructions, the verdict of the jury necessarily carries with it the implication that the jury believed that the accident occurred at a time when lights were not necessary as required under the act of assembly. At the conclusion of his charge, the court, HILDEBRAND, J., very carefully summarized the

issue as follows: "Now, briefly, the contentions of the parties are: That of the plaintiff; that defendant's negligence caused this injury to the plaintiff, that such negligence consisted in defendant's not having his car under proper and adequate control, in not having an adequate and proper look-out ahead so as to avoid danger to other people, and in ignoring the signal given by the witness Pratt. The defendant's contention is, briefly: that he was not guilty of negligence, that he was exercising all the care that was required of him under the circumstances as they existed at the time, that the accident resulted from this wrecker being present on the road without lights and without any warning being given to him of its presence there."

The first assignment of error relates to the refusal of the court to affirm defendant's request for instructions that "under the evidence the wrecking car of S. H. Stillwagon was not equipped with lights and light equipment as required by article 8, of the act of May 11, 1927, P. L. 920."

In view of the instructions in the general charge that there was no contention that the wrecker was equipped as provided in the act of assembly, we do not feel that defendant was prejudiced by the refusal of the point referred to, particularly as the point was not read to the jury.

Defendant's own testimony warranted the jury in finding defendant negligent in the operation of his car. With the testimony on his part that it was snowing enough immediately before the accident to obstruct his vision along the highway, that it was dark at the time; that notwithstanding his headlights threw a reflection a distance of thirty or forty feet, he did not see the wrecker until he was about onto it and not over eight or nine feet away, with his knowledge that the road was wet and slippery and that it was more difficult to stop than when the road is dry, and the snow

storm coming right against the windshield, he was traveling at a speed of twenty miles an hour.

The driver of a motor vehicle must have it under such control as to be able to stop within the range of his lights; and this is so even where the vision is shortened by storm or other conditions. Simrell et ux. v. Eschenbach, 303 Pa. 156, 160. In that case, Mr. Justice WALLING quotes with approval from Huddy on Automobiles (6th. Ed.) section 307, which states: "One restriction on his (the driver's) speed is that he shall keep the machine under such control and operate it at such speed that he can stop the machine and avoid an obstruction or danger or another traveler within the distance that the highway is illuminated by his lights. As was said in one case, 'It was negligence for the driver of the automobile to propel it in a dark place in which he had to rely on the lights of his machine at a rate faster than enabled him to stop or avoid any obstruction within the radius of his lights, or within the distance to which his lights would disclose the existence of obstruction........If the lights on the automobile would disclose obstructions only ten yards away, it was the duty of the driver to so regulate the speed of his machine that he could at all times avoid obstructions within that distance. Mr. Justice KEPHART, speaking for the Superior Court in McGrath v. P. R. R. Co., supra, (71 Pa. Superior Ct. 1) says: 'It is the duty of the driver of a car, driving on a dangerous highway on a dark, stormy night, to have his car under such control that he may stop or turn it away when objects intercepting his passage come within range of the rays of light from his lamps. If he drives so fast that he cannot avoid what ordinary prudence would make a known obstruction, he is guilty of negligence.' See also Brink v. City of Scranton, 85 Pa. Superior Ct. 342. It is the only safe rule, for it is possible obstructions may appear at any time in the traveler's path, as the result of accident or other-

wise." To the same effect, Filer v. Filer, 301 Pa. 461; Mason v. Levine, 302 Pa. 472, 479.

The only rational conclusion is that defendant did not have his car under control or drove ahead when he could not see.

One of the disputed questions of fact was whether the accident occurred at such a time that lights were required under the provisions of the vehicle code. The verdict of the jury absolves plaintiff from the charge of contributory negligence in that respect, even if he were visited with any responsibility in that connection.

The lower court in its opinion overruling the motion for judgment non obstante veredicto, cites the case of Roberts, Admr., v. Freihofer Baking Co., 283 Pa. 573, in which a man was killed while doing some temporary repair work on an automobile standing in the street. It was there held that the case was for the jury where the evidence shows that the driver was running his car at a high rate of speed at night; that there was an open space sufficient for him to pass without striking the deceased, and that he could have seen him, if he had looked with proper care.

Appellant argues very strenuously that plaintiff was engaged with Stillwagon in a common cause and that the alleged failure to have lights on the wrecker as provided in the vehicle code, and the placing of the wrecker on the highway, constituted an obstruction to travel and therefore a nuisance, and bars a recovery by plaintiff.

The court below charged in effect that if Stillwagon, the driver of the wrecking car, was negligent because of the manner in which the wrecker was parked on the highway, or because of his failure to provide proper lights on the wrecker, this negligence would be imputed to the plaintiff. This was on the theory that Stillwagon and the plaintiff were engaged in a joint enterprise in extricating plaintiff's automobile.

It appears from the testimony that Stillwagon

brought his own wrecking car, and put it in position to raise the wrecked car. Chains were then adjusted to the car in the ditch, in the doing of which the plaintiff assisted Stillwagon. There is in the case no evidence that Rocco, the plaintiff, had any right to control the position of the wrecker, or any right to dictate whether lights thereon should be lit or otherwise. There is no evidence that Rocco had anything to do with the manner in which his car was being raised. There is nothing which would indicate that plaintiff in any way was responsible for or had a right to control the acts of Stillwagon, upon which acts the defense of contributory negligence was based.

In order that negligence may be imputed to persons engaged in a joint enterprise, it must appear that there was joint right of control of the operation.

The general rule is stated in 45 Corpus Juris 1020: "Persons Engaged in Common or Joint Enterprise. Where persons are engaged in a common or joint enterprise and each has an equal right to direct and control the conduct of the others with respect to the acts or omissions which contributed to cause the injury, the negligence of one of such persons is imputed to each of the others. While there is some authority to the contrary, the great weight of authority is to the effect that to constitute a common or joint purpose within the rule as to imputed negligence, there should be a joint interest or community of interest in the object or purposes of the undertaking and an equal right to direct and govern the movement and conduct of each other in respect thereto. Each must have some voice and right to be heard in its control and management, and the mere fact that two persons are doing something together does not make each chargeable with the negligence of the other, nor does the fact that they have certain plans in common."

In two recent cases in the Supreme Court, Carlson v. Erie R. R. Co., 305 Pa. 431, and Rodgers v. Saxton,

305 Pa. 479, the Supreme Court holds that in order that negligence be imputed through the joint enterprise doctrine there must exist some right of control in the injured party over the acts alleged to have been negligent.

Under the evidence in the instant case we do not think that the joint enterprise doctrine applies.

The charge of the court on this feature of the case was more favorable than that to which defendant was entitled.

The case was submitted in a fair and comprehensive charge, and the verdict is fully sustained by the evidence.

The assignments of error are overruled and judgment affirmed.