## Krastel v. Lutterer

*Edward Rubin,* for plaintiff.

*William B. Moyer,* for defendant.

MONROE, J., May 24, 1972.—On February 19, 1970, plaintiffs were both severely injured in an automobile accident which occurred on Ferry Road, a two-lane 20 feet wide country roadway, in New Britain Township, Bucks County, Pa. At the time of the accident, plaintiff, Joseph Franklin Krastel, was operating a Dodge van in a northerly direction on Ferry Road with plaintiff, John Clinton Krastel, seated in the front passenger seat. Defendants, Roger H. Bryan and William G. Lutterer, Jr., were each operating a motor vehicle in a southerly direction on Ferry Road with the Bryan vehicle in the lead. The Krastel and the Lutterer vehicles collided head-on when the Lutterer car crossed the center line of the highway from the southbound lane of traffic into the northbound lane of traffic at the moment when the Krastel vehicle and the Bryan vehicle were passing each other, in opposite directions. Joseph Franklin Krastel instituted an action in trespass against both defendants to March term, 1970, no. 65, and John Clinton Krastel instituted such an action against said defendants to December term, 1970, no. 701. By order of this court dated February 22, 1971, both cases were consolidated for the purposes of dis-

covery and trial. On November 17, 1971, the cases attached for trial as to the claims of plaintiffs against Roger H. Bryan only.[1] At the close of plaintiffs' case on motion of defendant Bryan, nonsuits were granted as to each plaintiff. On November 22, 1971, plaintiffs filed motions to take off the nonsuits assigning as the reason therefor:

"The learned trial judge erred in not giving plaintiffs the benefit of all evidence favorable to them together with all reasonable inferences of fact arising therefrom and in not resolving conflicts in evidence in favor of the plaintiffs."

The said motions were argued before the court on March 27, 1972. In their brief submitted at argument, the question involved was stated to be "whether the trial judge erred in taking the case from the jury and in doing so impliedly ruling that all evidence favorable to plaintiffs, together with all reasonable inferences of fact arising therefrom, when assumed to be true and looked at in a light most favorable to plaintiffs, was insufficient for the jury to find negligence on the part of the defendant, Roger H. Bryan." On April 6, 1972, the court entered separate orders in each case denying plaintiffs' motions to take off the compulsory nonsuits. From such orders plaintiffs have appealed. This opinion is prepared in compliance with Rule 46 of the Superior Court of Pennsylvania.

The judgment of nonsuit can be entered only in clear cases and plaintiff must be given the benefit of all evidence favorable to him, together with all reasonable inferences of fact arising therefrom and

---

1. A settlement had been reached by plaintiffs with Lutterer, prior to the trial. This does not appear of record in the trial proceedings.

any conflict in the evidence must be resolved in his favor: Flagiello v. Crilly, 409 Pa. 389 (1963); Apple v. Reichert, 443 Pa. 289, 293 (1971). It is for us to determine whether the trial judge in granting the nonsuits gave due heed to the fundamental principle of law stated.

It should be stated preliminarily that defendant has not suggested that either plaintiff was guilty of contributory negligence. The evidence would not justify such a conclusion and that issue is not in the case. Plaintiffs' contention is that their evidence establishes a prima facie case of (a) negligence on the part of defendant Bryan which establishes his liability to plaintiffs and (b) negligence on the part of defendant Lutterer which is imputable to defendant Bryan. In this latter connection, we state that in our opinion the evidence is sufficient to establish negligence on the part of Lutterer which was a proximate cause of the injuries to plaintiffs. This issue is not in dispute and we, therefore, do not consider it necessary to dwell upon it. It is disputed, however, that such negligence could be imputed to defendant Bryan.

Plaintiffs' evidence consisted of the testimony of both Krastels and reading into evidence portions of depositions previously taken, under oath, of Lutterer and Bryan.

Joseph Franklin Krastel testified that on the date of the accident, February 19, 1970, at 5:15 or 5:20 p.m. when it was still daylight, the weather was cool and clear, the highways were free of ice and snow and water, he was operating a 1969 Dodge van in a northerly direction on a straightaway section of Ferry Road, approximately 20 feet wide, with one lane for northbound traffic and one for southbound traffic. The speed of his vehicle was 40 to 45 m.p.h.

Seated beside him at the front of the vehicle was his brother, John Clinton Krastel, the other plaintiff. Joseph Krastel, the driver, first saw the Bryan vehicle when it was approximately an eighth of a mile away [2] and was approaching in the southbound lane of traffic. The Lutterer car was "right in back of" the Bryan car and for that reason he did not see the Lutterer car until the Krastel van and the Bryan vehicle were in the act of passing one another. At that instant he heard a roar and for the first time saw the Lutterer car two or three feet behind the Bryan vehicle and coming into the northbound lane of traffic. The Lutterer car and the van collided and plaintiffs were injured. John Clinton Krastel testified that he was a passenger in the vehicle his brother was driving, sitting on the passenger side of the front seat; that he was talking to his brother and looking out of the window and that he did not observe either car until the van and the Bryan car were passing one another. At that time he saw half of the Lutterer car coming into the northbound lane of traffic and it then appeared to be one foot behind the Bryan car. The collision followed.

Neither Krastel testified as to the speed of the Bryan or Lutterer vehicles or any change of speed by either or any change in the course of direction of the Bryan vehicle in its journey along the southbound lane of traffic of Ferry Road, or any appearance of erratic driving of the Bryan vehicle and both admitted that the van and the Bryan vehicle did not come into contact. The testimony of the two witnesses would support an inference that the Lutterer vehicle was being operated behind the Bryan vehicle and in such proximity thereto that it could not be ob-

2. He also testified that when he first saw it his vehicle was one eighth of a mile from where the collision took place.

served by traffic approaching in the northbound lane until such traffic was in the act of passing the Bryan vehicle and would support the further conclusion that when the front of the Lutterer vehicle was within a distance of two or three feet from the rear of the Bryan vehicle, it suddenly swerved into the northbound lane of traffic. However, there is nothing in the testimony of the Krastels which would justify a conclusion of negligence on the part of defendant Bryan, although it does support such a conclusion as to the manner in which Lutterer was operating his vehicle.

Plaintiffs did not call either Lutterer or Bryan as their witness or to testify as on cross-examination. Instead, plaintiffs elected to place in evidence portions of depositions previously taken under oath of the said defendants. The depositions support the following factual findings: On the day in question, Bryan was operating a 1967 Chevy II Nova, maroon color, eight cylinders, standard transmission on the floor, four forward speeds, 270 horsepower engine, and titled in his father's name. At 4 or 4:30 p.m. of the day of the accident he drove, in the vehicle mentioned, to the Schneider Company Cadillac Agency where Lutterer was employed. He entered the agency building, said hello to Lutterer and then went out and waited in Lutterer's car for the latter to finish working. In approximately 20 minutes Lutterer finished his work, he left the agency building and he and Bryan talked with each other for two or three minutes when Lutterer suggested that they go to the Crossroads Luncheonette and have a cup of coffee. At that time, Lutterer owned a 1970 Oldsmobile two-door Holiday Coupe, having a 455 cubic inch motor, four barrel carburetor and dual exhaust system. The shortest route from the Schneider Cadillac Agency to the Crossroads Luncheonette was by go-

ing north on Route 611 to Sawmill Road, turning left on Sawmill Road and proceeding to Route 313 and then turning right on Route 313 to the luncheonette.

The two defendants left the Schneider Agency, Bryan driving the Chevy Nova and Lutterer the Oldsmobile. Neither was accompanied by any passenger. The two had planned to meet at the luncheonette. On the journey thereto, Bryan drove off first. He did not take the most direct route to the luncheonette, for at the intersection of Route 313 and Ferry Road he turned left on Ferry Road. As he proceeded to Ferry Road, he observed in the rear view mirror the Lutterer vehicle following. When Bryan was about to turn into Ferry Road, he saw in his mirror the turn signals on the Lutterer car and after he was on Ferry Road for a while he glanced in his mirror and saw the Lutterer vehicle about five car lengths behind him. If Bryan's deposition contained any testimony as to how the accident happened, that part of the deposition was not placed in evidence. However, Lutterer was asked to describe how the accident occurred. He testified, in the deposition:

"A. I was following Roger and I—until this day I can't recall, but I have a feeling that I just glanced to the side, maybe glanced to the radio, I don't know, and when I looked up Roger had slowed down for the oncoming traffic which was coming and when I saw his brake lights, it startled me and I hit the brakes. When I hit the brakes I skidded across the lane, across the center line."

Plaintiffs' theory of Bryan's negligence is that while he was aware that the Lutterer vehicle was following his at a distance of only three feet behind he suddenly applied the brakes of his car without necessity to do so and without looking behind to see if he could do so in safety. All of this is conjecture and would

require speculation and conjecture on a jury's part to so find. The evidence does not support such inferences. Accepting as truthful, as we must, the testimony of the Krastels that the Lutterer car was only approximately three feet behind Bryan's car at the time the Lutterer vehicle crossed into the northbound lane of traffic, and the testimony of Joseph Franklin Krastel that he did not see the Lutterer vehicle until the van was passing the Bryan vehicle, we may infer that the Lutterer vehicle was sufficiently close to the Bryan car as the two cars and the van approached each other for the Bryan car to obstruct the view of the Lutterer vehicle, but it does not follow as a permissible inference that during all of that period of time and for the full distance of the eighth of a mile or less traversed by the two defendants' vehicles before the collision that the space between those vehicles remained at three feet and was not of a greater distance. Also, because the testimony of the Krastels is accepted that the space between the defendants' vehicles was three feet at the time the Lutterer vehicle first came into view it does not follow that inconsistent therewith and must be rejected is the testimony of Bryan, that for a while after he turned onto the Ferry Road he had observed the Lutterer vehicle behind him a distance of approximately five car lengths; and it does not follow as a permissible inference that Bryan had braked his vehicle without having observed the distance of the Lutterer vehicle behind him or in disregard of danger in doing so by reason of the proximity of the Lutterer vehicle.

The evidence does not support an inference that there was no necessity for Bryan to brake his vehicle (had he done so). Because of the testimony that the Krastel vehicle was remaining constantly in its proper lane of traffic and Lutterer's deposition

that "when I looked up Roger had slowed down for the oncoming traffic which was coming," plaintiffs' claim is that there was no necessity to brake the Bryan car. The conclusion sought is not justified. Plaintiffs had not eliminated the presence of other traffic or causes upon the highway or in close proximity thereto which would dictate to a prudent driver that the speed of the Bryan vehicle should be slackened. The statement of Lutterer in his deposition is conclusionary and not evidentiary of the reason for Bryan to brake the vehicle. If the inference is correct, that the Krastels could not observe the Lutterer vehicle because its presence behind the Bryan vehicle was obstructed it would follow that the presence of the Bryan vehicle ahead of the Lutterer vehicle would obstruct or impede Lutterer's view of the highway and oncoming traffic or other conditions thereon ahead of the Bryan vehicle, thus depriving Lutterer of an opportunity of determining what causes may have brought about the braking (if any) of the Bryan vehicle. Compare Cuthbert v. Philadelphia, 417 Pa. 610 (1965), wherein plaintiff testified that her fall upon a street was caused by a certain defect in the crosswalk, which she had not observed until she revisited the scene of the fall after she had been hospitalized. Said the appellate court, page 615:

" . . . While, during this direct examination, Mrs. Cuthbert testified that at the time she fell and thereafter, she 'knew' that it was into this defect which she fell and identified it on an exhibit, there was absolutely no evidentiary fact upon which this conjecture could have been based, nor upon which the jury could have weighed it. The jury may not be permitted to reach its verdict on the basis of speculation or conjecture; there must be evidence upon which its conclusion may be logically based: . . . "

And on page 616:

"Mrs. Cuthbert may very well have fallen into the defect as she alleged, but she has failed to prove any facts upon which the jury would have been justified in so finding. It is equally possible that she tripped over a properly maintained section of the trolley rail for which, while unfortunate, no liability would have attached."

Furthermore, there is absolutely no testimony from which a sudden braking or stopping of the Bryan vehicle can be inferred. Neither of the Krastels testified to any change in speed of the Bryan vehicle. There is no suggestion thereof in the testimony of Lutterer above quoted. He makes no reference to a sudden stop. He said:

"When I looked up, Roger had slowed down for the oncoming traffic which was coming."

This does not suggest at all a sudden braking of the Bryan car but rather a gradual decrease in its speed. Indeed, his deposition does not suggest the necessity for a sudden application of the brakes of his own car or alteration of the direction of his vehicle by reason of the slowing of the Bryan car for he said that when his attention had returned to where it always should have been, he saw Bryan's "brake lights, it startled me and I hit the brakes," thus suggesting that it was his startled condition which caused him to hit the brakes of his vehicle and thus be diverted into the northbound lane of traffic rather than the slowing of the Bryan vehicle. Compare Johnson, Admr. v. Angretti, 364 Pa. 602 (1950), where the vehicle operated by Angretti was the third in a line of traffic headed by a passenger bus. The bus came to a very gradual stop and the flashing stop lights on its rear were operating. The second car in line also stopped. Angretti applied the brakes on his vehicle which, he testified, pulled

him to the left into the opposing lane of traffic where his vehicle collided with one operated by plaintiff's decedent. The court said that the situation created by the stopping of the bus was merely a circumstance of the accident and not its proximate cause and that the accident was due entirely to the intervening and superseding negligence of Angretti in allowing his truck to pass over into the pathway of westbound traffic. In support of their position of the negligence of defendant Bryan on the theory just discussed, plaintiffs have relied upon section 1012 of The Vehicle Code, 75 PS § 1012, which provides:

"The driver of any vehicle upon a highway before starting, [and] stopping . . . shall first see that such movement can be made with safety . . . Before making any such vehicle movement, the driver shall give a plainly visible signal in the manner described in this section . . . "

As we have already said, the evidence does not justify an inference that Bryan did not observe the location of the Lutterer vehicle before he started braking his car, if he did brake it. The deposition of Lutterer establishes that the proper signal was given. He testified that he observed the brake lights of the Bryan car. Plaintiffs also rely on the decision in Toff v. Rohde, 208 Pa. Superior Ct. 411 (1966) and Commonwealth v. Fisher, 8 Adams 99. Both of these cases involve the question of the negligence of a driver of a vehicle who suddenly brings his car to a stop in a line of traffic. They have no application to the question before us for, as we have said, the evidence does not justify a finding or inference of a sudden stopping of the Bryan vehicle.

To support the proposition that the negligence of Lutterer is imputable to Bryan, plaintiffs quote from Ogle v. Avina, 33 Wis. 2d 125, 146 N. W. 2d 422:

"When there is an understanding to reach a com-

mon destination and in doing so illegal speed is used and the cars are driven so closely together as to be practically in tandem, or to constitute a unit, we have a situation of mutual stimulation where the negligence of each participant is so related to the negligence of the other participants that the participants should each be chargeable with the causal negligence of the other as to speed and their percentage as to causal negligence should be equal."

In this same connection, 60A C.J.S. Motor Vehicles §297—Racing, states:

"Racing motor vehicles on a public highway, unless properly authorized by public authorities , . . . is unlawful, and has been held to constitute negligence or negligence as a matter of law. Consequently, all those who engage in a race do so at their peril, and are liable for an injury sustained by a third person as a result thereof, regardless of which of the racing cars actually inflicted the injury or of the fact that the injured person was a passenger in one of the cars."

This appears to be the law of Pennsylvania. See Shingler v. McCochran, 47 Westmoreland 173 (1965); Kump v. Weikert, 28 D. & C. 2d 751 (1962); and dissenting opinion of Mr. Justice Eagen in Commonwealth v. Root, 403 Pa. 571, 583 (1961).

Plaintiffs do not suggest that Bryan and Lutterer were involved in a speed contest. The evidence would not support such a suggestion. They suggest, however, that the principle of law stated in Ogle v. Avina is applicable to any type of game or activity in which defendants are acting in concert on the highway. With this we would agree but in the case before us the evidence does not justify a finding that defendants were engaged in any game or in any activity other than proceeding toward a common destination. That alone would not impose liability on Bryan for negligence of Lutterer. Plaintiffs suggest that because both defen-

dants had high powered cars, and were proceeding therein by route other than the shortest to a common destination, following one another with the Lutterer vehicle within a few feet of the Bryan car immediately prior to the accident and that there was a roar of the Lutterer vehicle engine instantaneously preceding the accident, it may be legitimately inferred that the two were engaged in some kind of a game. We think that this is an absolute nonsequitur. Finally, it cannot be inferred that defendants were engaged in a joint or common enterprise. In 65A C.J.S. Persons Engaged in Common or Joint Enterprise, §158, it is stated:

"Where persons are engaged in a common or joint enterprise and each has an equal right to direct and control the conduct of the others with respect to the acts or omissions which contributed to cause the injury, the negligence of one of such persons is imputed to each of the others in actions against third persons.

"In order to constitute a common or joint purpose within the rule as to imputed negligence there should be a joint interest or community of interest in the object or purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other with respect thereto; each must have some voice and right to be heard in its control and management, although it is not necessary that each have the usual powers of a general partner. The mere fact that two persons are doing something together does not make each chargeable with the negligence of the other, nor does the fact that they have certain plans in common."

In Rocco v. Tillia, 106 Pa. Superior Ct. 597 (1932), wherein an automobile wreck tow car was dangerously positioned on the highway without the required lights, in the process of extracting a wrecked vehicle from a ditch, it was held that the owner of the wrecked

vehicle watching the removal of his car from the ditch, was not engaged in a common enterprise with the mechanic undertaking the work. The court stated:

"There is in the case no evidence that Rocco, the plaintiff, had any right to control the position of the wrecker, or any right to dictate whether lights thereon should be lit or otherwise. There is no evidence that Rocco had anything to do with the manner in which his car was being raised. There is nothing which would indicate that plaintiff in any way was responsible for or had a right to control the acts of Stillwagon [the operator of the wrecker], upon which acts the defense of contributory negligence was based.

"In order that negligence be imputed to persons engaged in joint enterprise, it must appear that there was a joint right of control of the operation."

There is no evidence in the case before us that Bryan had any right to control the route by which Lutterer traveled to the luncheonette or the manner in which Lutterer operated his vehicle.

For the foregoing reasons, we are satisfied that the involuntary nonsuit was properly entered.